

09/02/2009

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| AMIT MAHENDRA DESAI and § | Case No. 07-41713 | |
| NEHA AMIT DESAI, § | (Chapter 7) | |
| § | | |
| Debtors. § | | |
| § | | |
| § | | |
| EAGLE SINDH, INC., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Adv. No.   07-04190 | |
| § | | |
| AMIT MAHENDRA DESAI, § | | |
| § | | |
| Defendant. § | | |

## MEMORANDUM OPINION

This matter is before the Court following a trial on the complaint filed by the Plaintiff, Eagle Singh, Inc. against the Defendant, Amit Mahendra Desai. The complaint in this action, as amended, seeks a determination of nondischargeability pursuant to 11 U.S.C. §523(a)(2)(A), (a)(4), and (a)(6) as well as a denial of discharge pursuant to 11 U.S.C. §727(a)(2), (a)(3), (a)(4) and (a)(5).[1]  In its post-trial brief, however, the Plaintiff elected to seek only a judgment of nondischargeability under 11 U.S.C. §523(a)(6) or, alternatively, a denial of discharge pursuant to 11 U.S.C. §727(a)(3), (a)(4) and (a)(5).

This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The Court

---

[1] Both the adversary complaint, as amended, and the parties' joint pre-trial order refer to a cause of action under 11 U.S.C. §525(a)(5). This provision does not exist. The text of the adversary complaint and the joint pre-trial order demonstrate that the Plaintiff is actually seeking a denial of the Defendant's discharge pursuant to 11 U.S.C. §727(a)(5), among other grounds.

1

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) as well as the standing order of reference in this district. This matter is a core proceeding in which this Court may enter a final order pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

## I. FINDINGS OF FACT

The dispute in this case involves the operation of the Ross Truck Stop located at 3001 West Oak Street in Palestine, Texas, and referred to by the parties as "Ross #2." The Defendant began operating Ross #2 on or about December 1, 2005. Several months earlier, two of the Defendant's friends began operating a Ross Truck Stop located at 16704 North Interstate Highway 35 in Ross, Texas, and referred to by the parties as Ross #1. In particular, on or about August 25, 2005, Ahmar Ahmad ("Ahmad") and Mohammed Nasir Khan ("Nasir") entered into a Business Management Services Agreement relating to the management of Ross #1.

The Ross Truck Stop involved in this adversary proceeding, Ross #2, is a convenience store, travel center and gasoline station. The Plaintiff owns the buildings and land comprising Ross #2. Prior to December 2005, the owner of the business and the owner of the assets of the business, such as inventory, was Leshari, Inc. doing business as "Ross Travel Center." The president and owner of the Plaintiff, Atta Hussein ("Hussein"), also owned Leshari, Inc.

The Defendant's operation of Ross #2 was his first foray into convenience store management. Ahmad assisted the Defendant in the operation of Ross #2 by, among other things, co-signing as a guarantor on the store's fuel contract with Financial Pacific Leasing Company. Nikki McLen, a manager of Ross #2 under the Defendant, testified

under oath that she understood Ahmad to be a "partner/friend" of the Defendant. At the trial, however, the Defendant testified that Ahmad was merely an employee at Ross #2.

The Defendant's management of Ross #2 was formalized in January 2006. On January 31, 2006, Hussein, as president of the Plaintiff and owner of Lashiri, Inc., and the Defendant executed a Management and Lease Agreement. Pursuant to the Management and Lease Agreement, the Defendant was to operate the business at Ross #2 and to own the assets of the business, such as inventory. The lease agreement covered the period from December 1, 2005 (which is when the Defendant actually began to manage Ross #2) to December 31, 2010, with an option for a five year extension. The Defendant could terminate the Agreement at any time upon 60 days notice to the Plaintiff and payment of an amount equal to 25% of the rent due under the remainder of the lease period less the value of the inventory at the store.

During 2006, Hussein's relationship with the Defendant, Nasir and Ahmad became increasingly hostile. The Defendant, Nasir and Ahmad believed that Hussein had agreed to modify the agreements relating to the operation of Ross #1 and Ross #2, which Hussein denied. During this contractual dispute, Nasir reported Hussein to Child Protective Services for child abuse. An arbitrator later found that this report was false and was made in circumstances constituting intentional infliction of emotional distress.

The Defendant walked away from Ross #2 on or around January 31, 2007. He never returned. Although the Defendant failed to conduct a formal inventory during his operation of Ross #2, he testified that the goods left behind at the store might have been worth approximately $20,000. He also testified that Ross #2 was profitable as of January 31, 2007. The Defendant testified that he abandoned the store as a result of his dispute

with Hussein regarding whether Hussein had agreed to modify the Management and Lease Agreement.

The Plaintiff sued the Defendant, among others, in state court for unpaid rent due under the Management and Lease Agreement relating to the operation of Ross #2. The Defendant responded to the complaint and participated in a deposition on April 27, 2007. The Defendant, however, failed to appear at a hearing on a motion for summary judgment filed by the Plaintiff in the state court action. Accordingly, on June 29, 2007, the state court entered a Final Partial Judgment against the Defendant. The Final Partial Judgment awarded the Plaintiff $231,814.49 plus pre-judgment interest at the rate of 8.25% and attorneys' fees in the amount of $3,085.27.

The Defendant and his wife (collectively, the "Debtors") filed a petition for relief under Chapter 7 of the Bankruptcy Code on August 3, 2007. The Defendant was employed as an associate at RaceTrac at that time. The Debtors stated on their bankruptcy petition that their debts were primarily consumer debts. The Debtors' debts were, in fact, primarily related to the Defendant's operation of Ross #2 and the judgment arising from the state court lawsuit brought by the Plaintiff against the Defendant.

The Debtors listed Hussein and Hussein's attorneys as unsecured creditors. Their unsecured creditors also included a number of debts they described on their schedules as "business miscellaneous." The Debtors listed Financial Pacific Leasing Company as an unsecured creditor with a claim of $20,000, and they listed Ahmad as a co-debtor with respect to the obligation to Financial Pacific Leasing Company. They also listed Ahmad as an unsecured creditor on their Schedule F with a continent, unliquidated disputed

4

claim of $0.00.[2] The Debtors listed the Plaintiff as an unsecured creditor in their original schedules with a liquidated, undisputed, non-contingent claim in the amount of $250,000. After the Plaintiff initiated this adversary proceeding, the Debtors amended their Schedule F to designate the Plaintiff's claim as disputed.

The Defendant testified at trial that he used two accounts at First State Bank Frankston (Texas) in the operation of Ross #2. He closed these accounts in or around April 2007. However, in response to Question No. 11 in his Statement of Financial Affairs, in which the Defendant was directed to list all financial accounts which had been closed within the year prior to bankruptcy, the Defendant failed to disclose the existence of the accounts at First State Bank Frankston (Texas).

The Defendant testified at trial that his wife's uncle transferred the total sum of $50,000 to him during the two years prior to bankruptcy. However, in response to Question No. 2 in his Statement of Financial Affairs, in which the Defendant was directed to disclose income other than from employment or operation of a business during the two years prior to bankruptcy, the Defendant failed to disclose the his receipt of the $50,000. The Defendant testified that he used these funds to purchase inventory for Ross #2 and that he was (or felt) obligated to pay the money back. According to the Defendant, the $50,000 obligation to his wife's uncle is not accruing any interest and there is no specific time by which he is required to pay back the funds.

The Defendant testified at trial that he took his business licenses and permits with him when he walked away from Ross #2 on January 31, 2007. The Defendant testified

---

[2] The Defendant testified at trial that Ahmad signed the agreement with Financial Pacific Leasing Company merely because the company required two signatures. The Defendant denied that Ahmad had any liability to Financial Pacific Leasing Company. The Defendant's testimony regarding the nature of his business relationship with Ahmad was not credible, nor was it consistent with his own bankruptcy schedules.

5

that the computer which contained his business records had been stolen from his office at Ross #2 while he was on vacation several weeks earlier and that all of his other business records, such as end of day cash runs and sales tax records, were "missing." However, in response to Question No. 19 in his Statement of Financial Affairs, in which the Defendant was directed to list the individual in possession of his books and records or, if the books and records were not available, to explain, the Defendant answered "none."

Mrs. Desai did not work at Ross #2 and only visited the store a couple of times. She had no personal involvement in or knowledge of the facts underlying the lawsuit between Hussein and Nasir. Her testimony was largely based on what her husband has told her and on her observations of her husband's alleged demeanor. Mrs. Desai also testified that her husband did not bring home any bank or financial records when he abandoned the operation of Ross #2

## II. LEGAL CONCLUSIONS

### A. Denial of Discharge under §727(a) of the Bankruptcy Code

Section 727(a) of the Bankruptcy Code provides that a bankruptcy court must grant a discharge to a debtor unless one or more of the specific grounds for denial of a discharge enumerated in paragraphs (1) through (12) is proven to exist. The Plaintiff in this case seeks to deny the Defendant a discharge pursuant to paragraphs (3), (4) and (5). The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. *See, e.g., Friendly Finance Discount Corp. v. Jones (In re Jones)*, 490 F.2d. 452, 456 (5th Cir. 1974). Further, under Federal Rule of Bankruptcy Procedure 4005, the burden of proof is on the party objecting to discharge.

6

**1. 11 U.S.C. §727(a)(3) and (5)**

Section 727(a)(3) of the Bankruptcy Code states that a debtor will be denied a discharge when "the debtor has … failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . ." 11 U.S.C. §727(a)(3). "The plaintiff bears the initial burden of proving that the debtor's financial records are inadequate and that this failure prevented the plaintiff from ascertaining the debtor's financial condition." *Chemoil, Inc. v. Pfeifle (In re Pfeifle)*, 154 F. App'x 432, 433 (5th Cir. 2003) (citing *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003)). "If this burden is met, the burden shifts to the debtors to show the inadequacy is justified under all of the circumstances." *Id.* (citing *In re Dennis*, 330 F.3d at 703).

Similarly, §727(a)(5) states that a debtor will be denied a discharge when "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." The initial burden of going forward with evidence is on the objector, who must introduce more than merely an allegation that the debtor has failed to explain losses. Once the objector has introduced some evidence of the disappearance of substantial assets or of unusual transactions, the debtor must satisfactorily explain what happened. *See In re Reed*, 700 F.2d 986, 992-993 (5th Cir. 1983).

Here, the Plaintiff has sustained its burden under §727(a)(3) of showing the absence of records regarding the Defendant's operation of Ross #2. Thus, the question for the Court to decide is whether the Defendant has a sufficient justification for not

7

maintaining his financial records. The inquiry includes several relevant factors such as "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to the debtor or his business; and any other circumstances that should be considered in the interest of justice." *Meridian Bank v. Alten,* 958 F.2d 1226, 1230-31 (3rd Cir. 1992) (quoting *In re Wilson,* 33 B.R. 689, 692 (Bankr. M.D. Ga. 1983)). "[A]ny explanation given by the Debtor to explain any deficiency in his records must be evaluated both for its credibility and reasonableness under the circumstances of this Debtor's affairs and degree of sophistication and for the materiality of any insufficiency." *In re Benningfield,* 109 B.R. 291, 293 (Bankr. S.D. Ohio 1989).

The Defendant's convenience store business was not particularly sophisticated and does not appear to have involved large or complex transactions. *See Blockman v. Becker (In re Blockman),* 74 B.R. 233, 236 (Bankr. E.D. Tenn. 1987) (finding that debtor who had abandoned his home construction business was "held to the same standard as an ordinary consumer debtor" and was not required to keep a checking account). The Defendant's testimony that the computer containing all of his business records was stolen was not particularly credible inasmuch as the Defendant never identified the particular records that he claims to have kept on the computer and, in any event, a theft of a computer would not have affected bank records, receipts, or other documentary evidence duplicating, corroborating or supplementing the computer records. The Defendant has produced business records when having those records benefited him -- in connection with the state court lawsuit, for example, he provided a handwriting expert with copies of business documents containing Hussein's signature, including a copy of the document

8

allegedly signed by Hussein and amending the original Management and Lease Agreement. It appears to the Court, and the Court so finds, that the Defendant abandoned the bulk of his business records when he walked away from Ross #2 as a result of the dispute with Hussein. The Defendant's failure to keep or preserve information regarding his operation of Ross #2, including any information that may have been kept at this home, was not justified.

With respect to the $50,000 the Defendant received from his wife's uncle during the two years prior to bankruptcy, the Plaintiff has sustained its burden under §727(a)(5) of showing a loss of assets. If the Defendant spent the money to purchase inventory for Ross #2, as he testified, there should have been at least some documentation supporting his testimony. Moreover, the Defendant did not satisfactorily explain the nature of the transaction with his wife's uncle. Was it a gift? Was it a loan? The Court understands that cultural differences and family relationships may have some role to play here, but nebulous testimony uncorroborated by documentation is insufficient to carry the Defendant's burden to provide this Court with a satisfactory explanation of what happened to the money. The Defendant must explain the receipt and disposition of the $50,000 in such manner as to convince the Court of good faith and businesslike conduct. *See In re Reed*, 700 F.2d at 993 (debtor's explanation that almost $20,000 was consumed by undocumented business and household expenses and gambling debts was unsatisfactory). The Defendant has not done so, and the Court, therefore, concludes that the Defendant's discharge should be denied pursuant to 11 U.S.C. §727(a)(3) and (5).

### 2. 11 U.S.C. §727(a)(4)

Section 727(a)(4)(A) provides that the Court must deny the defendant a discharge

9

if the Defendant, knowingly and fraudulently, in or in connection with the case, made a false oath or account. In order prevail on its §727(a)(4)(A) objection to discharge, the Plaintiff must prove, by a preponderance of the evidence, that (i) a statement was made under oath, (ii) the statement was false, (iii) the Defendant knew the statement was false when made, (iv) the Defendant made the statement with fraudulent intent, and (v) the statement relates materially to the bankruptcy case. *See Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001). "The subject matter of a false oath is 'material,' and, thus, sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Beauboef v. Beaubouef (In re Beaubouf)*, 966 F.2d 174, 177 (5th Cir. 1992). False oaths sufficient to justify the denial of discharge include "(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at the examination during the course of the proceedings." *Id.* at 178 (citation omitted).

Here, the Defendant made the statements in his bankruptcy schedules and Statement of Financial Affairs under oath. *See* FED. R. BANKR. P. 1009. The Court finds that the Defendant's Statement of Financial Affairs and his original bankruptcy schedules contain false statements. The Court further finds that the Defendant's omissions and misstatements are material inasmuch as the omissions created the false impression that the Defendant is an ordinary consumer debtor with no prior closed bank accounts, other than a checking account at Washington Mutual, and no missing records. The Defendant testified at trial that he read his bankruptcy petition and schedules before they were filed and understood it was important that he submit accurate schedules and statements to the

10

Court. The Defendant offered no explanation for his failure to list his closed accounts at Texas State Bank Frankston (Texas) or his failure to disclose any missing books or records relating to his operation of Ross #2 in his Statement of Financial Affairs. *See, e.g., In re Mascolo*, 505 F.2d 274, 278 (1st Cir. 1974) ("knowing and fraudulent omissions of a bank account, whether or not it is closed at the time of filing, warrants the denial of discharge."). Although the Defendant amended his bankruptcy schedules during this adversary proceeding to indicate that his debts are primarily business debts, among other changes, he failed to correct the false statements and omissions in his Statement of Financial Affairs.

The Defendant, at a minimum, has acted in reckless disregard of his duty of candor to this Court. *See, e.g., Sholdra*, 249 F.3d at 382 (holding that a debtor's amendments to his bankruptcy schedules did not negate the fact that the debtor made false oaths in his original schedules). As explained by the Eleventh Circuit:

> The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them. The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act.

*In re Chalik*, 748 F.2d 616, 617 (11th Cir. 1984). *See also In re Beaubouef,* 966 F.2d. at 178 (quoting *In re Chalik*). The Court concludes that the Plaintiff has established grounds for denial of the Defendant's discharge pursuant to §727(a)(4)(A) of the Bankruptcy Code.

## B. Dischargeability of a Debt under §523 of the Bankruptcy Code

Having determined that the Defendant is not entitled to a discharge, the Court need not address the Plaintiff's claim that the Defendant's obligation to the Plaintiff should be determined nondischargeable pursuant to §523(a)(6) of the Bankruptcy Code. The Court will nonetheless address the Plaintiff's nondischargeability claim in order to provide the parties with a full discussion of the arguments raised at trial and in their post-trial briefs.

A fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor." *Grogan v. Garner,* 498 U.S. 279, 286-87 (1991). In furtherance of this policy, §523(a)(6) of the Bankruptcy Code provides that:

> (a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. §523(a)(6). In an action to determine the dischargeability of a debt under §523, the creditor has the burden of proof under a preponderance of the evidence standard. *See Grogan*, 498 U.S. at 286.

Here, the Plaintiff alleges that the Defendant intentionally broke the lease and abandoned Ross #2 in late January 2007. The Plaintiff further alleges that the Defendant knew his actions would harm the Plaintiff. The Defendant testified at trial that he was unaware of any other party who would make the rental payments or any other source from which the Plaintiff could mitigate its damages.

As the Supreme Court has explained, "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998). The Supreme Court explicitly

rejected a construction of "willful" under which a breach of contract could qualify, noting that "[a] construction so broad would be incompatible with the 'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed.'" *Id.* at 62 (internal quotations omitted). *See also In re Miller,* 156 F.3d 598, 602 (5th Cir. 1998) (discussing *Kawaauhau*). The Plaintiff's bare breach of contract claim fails, as a matter of law, to establish that the Defendant caused a "willful and malicious injury" for purposes of §523(a)(6). While an intentional breach of contract can be excepted from discharge under §523(a)(6) when it is accompanied by malicious and willful tortious conduct, s*ee In re Jercich,* 238 F.3d 1202, 1205 (9th Cir. 2001), *In re Riso,* 978 F.2d 1151, 1154 (9th Cir. 1992); *In re Smith,* 160 B.R. 551, 553 (N.D. Tex. 1993), the Plaintiff in this case failed to identify any tortious action by the Defendant that caused a willful and malicious injury.

### III. CONCLUSION

For the foregoing reasons, a judgment will be entered for the Plaintiff denying the Defendant's discharge under 11 U.S.C. §727(a)(3), (4) and/or (5).

Signed on 09/02/2009

_Brenda T. Rhoades_　MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE